UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MUJAHID FARID,

                                        Plaintiff,

          -v.-
                                                            9:06-CV-1545
J.R. DEMARS, Deputy Superintendent,                         (TJM/GJD)
of Programs, *et al.*,

                                        Defendants.


MUJAHID FARID
79-A-362
Plaintiff, *pro se*

CHARLES J. QUACKENBUSH, Asst. Attorney General
Attorney for defendants

THOMAS J. McAVOY, Senior United States District Judge

### MEMORANDUM DECISION and ORDER

In this civil rights complaint, plaintiff alleges that he is bringing this action pursuant to 42

U.S.C. § 1983, claiming that defendants violated the Americans with Disabilities Act (ADA), 42

U.S.C. § 12131 *et seq.* and the Rehabilitation Act (RA), 29 U.S.C. § 794 when they refused to allow

plaintiff, who is a diabetic, to obtain, either by mail order or through the commissary, certain kinds of

foods, including "natural health candy bars containing low sugar content." Compl. (Dkt. No. 1).

Plaintiff also alleges that defendants violated both the ADA and RA when defendants refused to

allow plaintiff to form an inmate organization related to diabetes and health education. *Id.*  Plaintiff

seeks declaratory, injunctive, and monetary relief.

Presently before the court is defendants' motion[1] for judgment on the pleadings pursuant to

FED. R. CIV. P. 12(c). (Dkt. No. 23).  Plaintiff has responded in opposition to the motion. (Dkt. No.

24).  For the following reasons, this court agrees with defendants and will dismiss the complaint in its

---

[1] The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has
been rescinded for purposes of this motion, and as such, any appeal taken from this order, if appropriate, will be to
the Court of Appeals for the Second Circuit.

entirety.

## DISCUSSION

**1.**    **Judgment on the Pleadings**

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly

brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Maggette v.*

*Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted).  *See* Fed. R. Civ. P. 12(b), 12(c) and

12(h)(2).  The motion for judgment on the pleadings is then treated according to the same standard as

a motion to dismiss under Rule 12(b)(6). *Id.*

To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim

rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"

*Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)(quoting *inter alia ATSI*

*Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff's factual allegations must be sufficient to give the

defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock*

*& Stone Corp. v. Oldcastle Ne., Inc*., 507 F.3d 117, 121 (2d Cir. 2007)).  When ruling on a motion to

dismiss, the court must accept as true all of the factual allegations contained in the complaint.

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citations omitted).  The court must

heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d

124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)(*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint

upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the

complaint as exhibits and any statements or documents incorporated into the complaint by reference.

*Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)(citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.

1989)).

**2.    Facts**

Plaintiff, an inmate at Franklin Correctional Facility, alleges that he is disabled by diabetes for purposes of the ADA. Compl. ¶ 8.  Plaintiff alleges that after he was diagnosed with diabetes, he attempted to research different ways to control his blood sugar. *Id.* ¶ 10.  Plaintiff noticed that all of the snacks and candy items that were being sold to inmates at the commissary had high levels of processed sugars and fructose. *Id.*  Plaintiff states that in September of 2003, he attempted to order "natural health candy bars" that were low in sugar, however, he was not allowed to receive them because they were considered "nutritional supplements." *Id.* ¶¶ 11-12.

Plaintiff claims that he filed a grievance in October of 2003 regarding the facility's decision to deny plaintiff the ability to order these natural health bars. *Id.* ¶ 13.  Plaintiff's grievance was denied by the Superintendent, and the Superintendent's decision was affirmed on November 26, 2003 by the Central Office Review Committee (CORC). *Id.* ¶¶ 14-15.  In the CORC's decision, plaintiff was advised to address his needs for "nutritional supplements" through the medical department. *Id.* ¶ 15. Plaintiff claims that in December of 2003, he submitted a request to defendant Habeck pursuant to the ADA in which plaintiff states that he sought permission to obtain the natural health candy bars through the mail, or alternatively to have them sold in the facility commissary. *Id.* ¶ 16.  Plaintiff refers to this request as a request for "reasonable accommodations." *Id.*

On December 17, 2003, defendant Habeck denied plaintiff's ADA request, stating that "circumstances" such as plaintiff's could not be interpreted as "a disability." *Id.* ¶ 17.  Plaintiff states that he researched the subject and determined that diabetes is considered a disability pursuant to the ADA. *Id.* ¶ 18.  Plaintiff states that he submitted a second request for accommodation in December of 2004, arguing that defendant Habeck's interpretation of the ADA was incorrect and requesting that he

reconsider his decision. *Id.* ¶ 19.  Plaintiff states that he expanded his request to include a "host of suitable items." *Id.*  Plaintiff states that defendant Habeck responded by memorandum dated December 29, 2004 in which he stated that he would not change his previous interpretation of the ADA, explaining to plaintiff that the term "reasonable accommodation" refers to "accessibility issues," and did not apply to plaintiff's request. *Id.* ¶ 20.  Defendant Habeck did, however, agree to solicit "an outside opinion on [plaintiff's] request," and if plaintiff's request was found "allowable," he would be notified and accommodations made. *Id.*

Plaintiff states that seven months passed without any further information from defendant Habeck, and on July 19, 2005, plaintiff and another inmate with diabetes filed grievances regarding this subject. Compl. ¶ 21.  On August 1, 2005, defendant Sears denied the grievances stating that although diabetes is considered a disability under the ADA, the statute relates to "accessibility issues, not to nutritional requests or requirements." *Id.* ¶ 22.  The inmates appealed, and on August 31, 2005, the CORC denied the joint grievances, affirming the facility decision. *Id.* ¶ 23.

Plaintiff states that on August 12, 2005, plaintiff and other diabetic inmates filed a request to form an inmate organization whose goal was to establish a support and health education group for diabetic inmates. *Id.* ¶¶ 24-25.  The proposed name for the association was "Prisoners' Association for Impacting Diabetes (PAID)." *Id.* ¶ 24.  On August 25, 2005, defendant Demars acknowledged receipt of the request and told plaintiff that he would be contacted in the near future with an answer. *Id.* ¶ 26.  Plaintiff claims that although the Department of Correctional Services (DOCS) "guidelines" required the facility to issue recommendations on these proposals within fifteen days, more than three months passed before plaintiff received a response. *Id.* ¶ 28.

Plaintiff states that on November 14, 2005, he filed a grievance complaining about the failure of the facility administration to properly process plaintiff's PAID application. *Id.* ¶ 29.  Plaintiff

4

claims that approximately one week after plaintiff filed the grievance, the Clerk of the Inmate

Grievance Resolution Committee (IGRC) told plaintiff that an investigation had been conducted

regarding the grievance, and that defendant Demars told the IGRC that plaintiff could be informed

that the request would be denied, even though there had been no "formal" response to plaintiff's

grievance. *Id.* ¶ 30.  Plaintiff states that he requested that the grievance be immediately forwarded to

the CORC, without waiting for the formal response, claiming that the grievance had been mishandled

in "an apparent coverup." *Id.* ¶¶ 31-32.  Plaintiff requested that the CORC review the substance of the

grievance as well as the circumstances surrounding how the grievance was handled. *Id.* ¶ 32.

Plaintiff states that by letter dated December 28, 2005, the director of the CORC, Thomas

Egan, stated that he was not going to "bypass facility review" and told plaintiff to wait for the facility

decision on the matter. *Id.* ¶ 33.  On February 9, 2006, defendant Sears denied the inmates' request to

form the PAID organization. *Id.* ¶ 35.  Plaintiff states that on February 1, 2006, "in what appear[ed]

to be an incongruent timeline,"[2] plaintiff was informed by the CORC that his grievance complaining

about the facility's alleged mishandling of plaintiff's grievance was denied, and that the CORC was

denying the plaintiff's request to form PAID. *Id.* ¶ 36.

The complaint contains six numbered causes of action. *Id.* ¶¶ 37-42.  The first cause of action

alleges that defendants have discriminated against plaintiff and the diabetic population[3] in refusing to

acknowledge that diabetes is a disability pursuant to the ADA, and in so doing, have failed to give

plaintiff appropriate health care. *Id.* ¶ 37 (First Cause of Action).  Plaintiff's second cause of action

alleges that defendants discriminated against plaintiff  when defendants refused to make reasonable

---

[2] Plaintiff refers to an "incongruent timeline" apparently because defendant Demars's denial of the inmates' request to form PAID was dated ***after*** the CORC's affirmance of that decision.

[3] Although plaintiff includes the diabetic inmate population in each of his causes of action, plaintiff may only represent himself in this case.

accommodations by allowing him to obtain low-sugar and other appropriate food items either through the mail or by providing these items in the commissary. *Id.*  ¶ 38 (Second Cause of Action).  Third, plaintiff claims that defendants have discriminated against plaintiff  by "applying a lesser standard in reviewing requests for accommodations" by diabetic inmates than is used in reviewing requests by inmates with other disabilities. *Id.* ¶ 40 (Third Cause of Action).  Plaintiff's fourth cause of action claims that defendants discriminated against plaintiff by failing to provide a program of continuing health education as mandated by New York law. *Id.* ¶ 40 (Fourth Cause of Action).  Plaintiff's fifth cause of action alleges that defendants discriminated against plaintiff by refusing to allow plaintiff to form PAID. *Id.* ¶ 41 (Fifth Cause of Action).  Finally, plaintiff alleges that defendants violated the ADA and RA when they failed to "adopt a prompt and equitable procedure for resolution of complaints alleging violations of these laws." *Id.* ¶ 42.

**3.      ADA and Rehabilitation Act**

The ADA and section 504 of the Rehabilitation Act are applicable to inmates in state correctional facilities. *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005).  In order to state a claim under section 504 of the Rehabilitation Act, the plaintiff must show that he (1) has a disability for purposes of the Act; (2) that he was "otherwise qualified" for a benefit that he was denied; (3) that he was denied the benefit solely because of his disability; and (4) that the benefit is part of a program or activity that receives federal financial assistance. *Romano v. SLS Residential, Inc*. 246 F.R.D. 432, 440 (S.D.N.Y. 2007).  Under the ADA, the inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Allah v. Goord,* 405 F. Supp. 2d at 274.

In this case, plaintiff first claims that defendants erred in failing to acknowledge that diabetes

is a disability for purposes of the ADA.[4]  Defendants **conceded** in response to plaintiff's grievance that diabetes was a disability, and that plaintiff was correct in his assertion.[5]  Compl. ¶ 22.  However, the fact that plaintiff has a disability and the fact that the ADA and RA apply to inmates does not mean that plaintiff's claim is protected by these statutes.  Even assuming that plaintiff meets the first element of both claims, that he has a disability under the acts, plaintiff must still meet the rest of the requirements.

Plaintiff claims that he should be able to either order certain foods through the mail or that the facility should stock these "natural health candy bars" in the commissary.  Plaintiff alleges that the failure of the defendants to allow either option is in violation of both the ADA and the RA.  Plaintiff refers to his request as a "reasonable accommodation."  The second requirement to state an ADA claim is that plaintiff is being excluded from, or being denied benefits of, some service, program or activity by reason of his disability.  In support of his argument, plaintiff cites a case in his memorandum of law for the proposition that the ADA requires prisons to accommodate the needs of prisoners with disabilities "in the use of the prison commissary". Pl. Mem. at 4 (citing *Love v. Westville Correctional Center*, 103 F.3d 558 (7th Cir. 1996)).

---

[4]  The standards for determining whether plaintiff states a claim under the ADA and the RA are almost identical.  The only difference in the statutes is that the RA applies to entities receiving federal financial assistance, and Title II of the ADA applies to all public entities. *Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008).  The difference in the two statutes is not relevant to this court's analysis because the court assumes that both statutes apply to DOCS, and the court's analysis applies to both statutes even though the decision may refer to only one of the statutes.

[5]  Plaintiff appears to be quoting from a December 17, 2003 memorandum that plaintiff states he received from defendant Habeck. Compl. ¶ 17.  The language quoted by plaintiff states that "[t]here is no mention of circumstances such as yours that could be interpreted as a disability." *Id.*  Defendant Habeck's statement is completely unclear, and he might have been referring to the fact that plaintiff's "circumstances," (i.e. the requests that he was making) were not protected under the ADA, rather than telling plaintiff that he did not have a disability. In any event, as stated above, the court will assume that defendant Habeck was attempting to tell plaintiff that he did not have a disability.  This fact is not determinative.  Plaintiff was ultimately told that he was correct in his assertion that diabetes was a disability, but that the "ADA relates to accessibility issues, not to nutritional requests or requirements." Compl. ¶ 22.

Plaintiff's citation of *Love* is misplaced, and the case actually supports the defendants' argument regarding "accessibility."  The inmate in *Love* was a quadriplegic confined to a wheelchair. *Id.* at 558.  He was complaining about the fact that he did not have "access" to the commissary itself, in addition to being denied access to a variety of other programs because he was in a wheelchair and housed in the infirmary unit. 103 F.3d at 558-59.  He was actually seeking physical "access" to the commissary, not requesting that the commissary stock special food items.  In contrast, defendants cite *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007 (D. Ohio 2004), in which the court held that the defendants' refusal to afford plaintiff a requested diabetic diet did not violate the ADA and the RA. *Id.* at 1016.  The court specifically stated that the ADA and RA "afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities." *Id.* (quoting *Galvin v. Cook*, CV-00-29, 2000 U.S. Dist. LEXIS 15181, *19-20, 2000 WL 1520231 at *6 (D. Ore. Oct. 3, 2000)).

In this case, whether plaintiff is claiming that the facility refused to obtain this special food for plaintiff or whether plaintiff is claiming that the facility refused to let plaintiff order the special food for himself, he is ***not*** stating a claim under either statute because he does not allege that he is being denied participation in, or the benefits of, services or programs afforded by the facility because he is diabetic.  The court does not wish to minimize plaintiff's condition, and understands that plaintiff is attempting to improve his health, however, the statutes cited by plaintiff simply do not afford him a right of action for the requests that he is making.

**4.**     **Inmate Organization and Continuing Health Education**

Plaintiff alleges in his fourth cause of action that the defendants have discriminated against plaintiff and other diabetic inmates by failing to provide a program of continuing health education as

mandated by New York law. (Fourth Cause of Action).  In plaintiff's fifth cause of action, he states that defendants have discriminated against plaintiff and other diabetic inmates by refusing to allow them to form the PAID organization.  The court is discussing these two causes of action together because plaintiff's fact statement mentions these two issues together. Compl. ¶ 27.  This paragraph of the complaint is the only other place in which plaintiff mentions the New York regulations.

Plaintiff cites Title 9 of the New York Code of Rules and Regulations section 7651.29.  This section merely provides that "[t]he department shall establish and implement a program of continuing health education which shall provide comprehensive health education information which shall be accessible to all inmates." N.Y. Comp. Codes R. & Regs. tit. 9, § 7651.29.  This section does not provide that the Department of Correctional Services (DOCS) must establish any *particular* health education program, and the law does not by itself give an inmate a cause of action for its violation.

The court would also point out that plaintiff's reference to this section of New York law is in conjunction with his statement that he "amended his original proposal by broadening the PAID intended activities and goals to include *general health education* as mandated by New York State Codes, Rules and Regulations, Title 9 § 7651.29." Compl. ¶ 27 (emphasis added).  According to the alleged "mandate" of section 7651.29, it is DOCS who must provide comprehensive health education information.  Plaintiff cannot state that defendants are violating this law by refusing to allow plaintiff and others to form an *inmate* organization whose goals are intended to provide diabetic inmates with "general health education."  There is no evidence that the defendants have violated this regulation or that DOCS does not provide "health education" that is accessible to all inmates.

Plaintiff's allegations also do not state a claim under either the ADA or the RA.  The defendants alleged violation of the New York regulation requiring DOCS to provide continuing health education does not deprive plaintiff participation in, or the benefits of, services or programs

afforded by the facility because he is diabetic.

Plaintiff also does not allege how the refusal of defendants to allow plaintiff to form the PAID organization or the alleged violation of the New York regulation has discriminated against plaintiff in relation to other non-disabled inmates.[6]   Although plaintiff states he is not bringing a constitutional due process claim, in his affidavit, he states that "the Defendants did not even afford [the request to form PAID] the minimal due process standards applicable to an application to form a group where disability accommodation was not an issue." Pl. Aff. ¶ 23.  In order to be entitled to "minimal due process," plaintiff would have to have a liberty or property interest in forming his requested organization. *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008); *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004).  The court would then have to examine whether the procedures used to deprive plaintiff of that interest were sufficient. *Id.*

There is no indication that plaintiff has either a liberty or a property interest in forming an inmate organization.  Plaintiff has also failed to allege how the defendants denied plaintiff of that interest and what "minimal due process" rights were violated by defendants' actions.  Basically, plaintiff alleges that defendant Demars did not follow DOCS guidelines by delaying the response to plaintiff's request for three months. Compl. ¶ 28.  Plaintiff also claims that he initially heard about the denial of his request from the IGRC clerk instead of through the formal channels.[7]  These allegations simply do not rise to the level of a "due process" violation to the extent that plaintiff is attempting to raise a due process violation.

---

[6] Plaintiff states that he is not bringing a constitutional claim under section 1983.  The court would simply note, in any event, that a violation of state law is not alone actionable under section 1983.  *See Doe v. Connecticut Dep't of Youth Services*, 911 F.2d 868, 869 (2d Cir. 1990).

[7] Plaintiff claims that he did not hear about the refusal until one week after he filed a grievance about the "failure to process the PAID proposal." Compl. ¶ 30.  The court does note that the plaintiff states that the IGRC clerk informed plaintiff that an investigation had been conducted. *Id.*  Plaintiff's issue seems to be that he was not told about the result in the proper way.

**5.      Grievance Procedures**

Plaintiff also alleges that defendants did not handle his grievances properly.  Plaintiff filed a grievance challenging the decision to deny plaintiff's and other inmates' request to form PAID, a "self-help health organization."  Although plaintiff is firm in his assertion that he is not attempting to state a due process claim,[8] to the extent that the complaint can be interpreted to raise a due process claim regarding the mishandling of plaintiff's grievance, the claim must be dismissed.  Inmates do not have a constitutional right to have grievances processed or to ensure that grievances are processed properly. *See  e.g. Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ( prison grievance procedures do not confer any constitutionally protected right on an inmate).  Thus, plaintiff has no constitutional claim.

Plaintiff insists that he is not bringing a constitutional claim, and that the ADA and RA's protections are "broader" that the protection afforded by the constitution.  As above, plaintiff claims that the violation of the grievance procedure contributed to the ADA and RA violation, and that this is all somehow related to plaintiff's request for "reasonable accommodations."  There is no basis for plaintiff's claim that the defendants' alleged mishandling of plaintiff's grievance deprived plaintiff participation in, or the benefits of, services or programs afforded by the facility, based on his disability simply because the grievance had something to do with his disability.  Thus, plaintiff cannot proceed with either a constitutional claim, an ADA, or an RA claim based on the alleged deficiencies in handling his requests for "accommodations."

**6.      Sovereign Immunity**

Plaintiff has not named the State of New York as a defendant, rather, he has named three defendants "Individually and in their Official Capacities." Compl. at 1.  The State of New York is a

---

[8] *See also* Pl. Mem. of Law at 8-9.

11

"public entity" within the meaning of the ADA. 42 U.S.C. § 12131(1)(A).  Naming a state defendant in his or her "official capacity" is tantamount to naming the State. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003), *cert. denied*, 541 U.S. 936 (2004).  In *Henrietta D.*, the Second Circuit held that a valid ADA claim may be stated against a state official in his or her official capacity. *Id.* at 288-89.  The ADA does not, however, provide for "individual capacity" suits against state officials. *Garcia v. S.U.N.Y. Health Science Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  Thus, in this case, to the extent that plaintiff has named the defendants in their individual capacities, the ADA and RA claims must be dismissed.  Defendants also argue that the Eleventh Amendment bars any claims for compensatory relief under Title II of the ADA.

Title II of the ADA contains a section specifically stating that a State shall not be immune under the Eleventh Amendment[9] from an action in Federal or State court for a violation of the ADA. 42 U.S.C. § 12202.  A state may not claim sovereign immunity if it has specifically waived that immunity or if Congress has abrogated that immunity pursuant to its power under Section 5 of the Fourteenth Amendment.[10] *Bd. of Trustees of the Univ. of Atlanta v. Garrett*, 531 U.S. 356, 363-64 (2001).  Courts have been attempting to determine the extent to which that sovereign immunity has been abrogated by the ADA. *Id.* at 360-74 (Title I); *Garcia*, 280 F.3d at 109-112.  In *Garcia*, the Second Circuit stated that plaintiffs must show that the Title II violation was "motivated by discriminatory animus or ill will due to disability." 280 F.3d at 112.  In *Tennessee v. Lane*, 541 U.S.

---

[9] The Eleventh Amendment states that the judicial power of the United States shall not extend to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST., amend. XI.

[10] The Fourteenth Amendment provides in relevant part that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; not deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV, § 1.  Section five of the Fourteenth Amendment provides that Congress shall have the power to enforce the substantive guarantees contained in section one by enacting "appropriate legislation." U.S. CONST. amend XIV, § 5.

509 (2004), the Supreme Court held that Congress had the power to enforce the constitutional right of access to courts.

Lower courts have interpreted *Tennessee v. Lane* in holding that a private suit for money damages under Title II of the ADA may only be maintained against the state if the Title II violation involved a "fundamental right" such as access to courts. *See Castells v. Fisher*, 05 CV 4866, 2007 U.S. Dist. LEXIS 30188, * 12-13 (E.D.N.Y. March 24, 2007)(citing *Press v. State Univ. of New York at Stony Brook*, 388 F. Supp. 2d 127 (E.D.N.Y. 2005); *Johnson v. S. Conn. State Univ.*, 2004 U.S. Dist. LEXIS 21084, 2004 WL 2377225, *4 (D. Conn. Sept. 30, 2004); *Roe v. Johnson*, 334 F. Supp. 2d 415, 421 n.9 (S.D.N.Y. 2004)).  In *United States v. Georgia*, 546 U.S. 151, 159 (2006), the Supreme Court stated that Title II is a valid abrogation of sovereign immunity, creating a private cause of action against the state for conduct that actually violates the Fourteenth Amendment.  The *Castells* court concluded that in light of *United States v. Georgia*, a plaintiff must demonstrate that his fundamental rights were violated because of his disability in order to prevail in a private suit against a state entity under Title II of the ADA. 2007 U.S. Dist. LEXIS 30188 at *13.

In this case, plaintiff's claims do not survive under any of the above standards.  Plaintiff has not claimed that he has received constitutionally inadequate medical care under the Eighth Amendment as a result of the defendants' actions.[11]  Plaintiff has not alleged that the food that he

---

[11] A claim alleging that prison conditions are in violation of the Eighth Amendment must satisfy both an objective and subjective requirement: the conditions complained of must be "sufficiently serious" from an objective standpoint, and the plaintiff must demonstrate the prison officials acted with "deliberate indifference." *Davidson v. Coughlin*, 920 F. Supp. 305, 308 (N.D.N.Y. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 298 (1991)).  The Eighth Amendment requires that inmates be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)(*per curiam*)(quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), *cert. denied*, 450 U.S. 1041(1981)).  In order to state an Eighth/Fourteenth Amendment claim, plaintiff in this case would have to allege that the defendants were deliberately indifferent to his serious medical needs or that the food that he was served was not nutritionally adequate.

received at the facility was not nutritionally adequate based upon his disability.[12]  As stated above, he

has stated no procedural due process claim resulting from either the denial of the grievance or the

alleged mishandling of the grievance.  Plaintiff claims that his health and well-being is a fundamental

right being affected by the defendants' conduct.  Even assuming that plaintiff has a fundamental right

to "health and well-being," his claim that the facility refuses to stock natural health bars and refuses

to allow the plaintiff to obtain them in the mail does not even approach a violation of his right to

health and well-being.  Finally, plaintiff has not alleged that defendants had any discriminatory

animus or ill will "due to his disability."  Thus, plaintiff's claim for compensatory damages would be

barred by the Eleventh Amendment.

     As defendants state, the Eleventh Amendment does not prevent prospective injunctive relief to

remedy a violation of federal law. *Henrietta D. v. Bloomberg*, 331 F.3d at 288.  However, as stated

above, plaintiff has not stated a claim for either an ADA or an RA violation, and thus, is not entitled

to equitable relief.

## 7.    <u>Miscellaneous Claim</u>

     In his response to defendants' motion, plaintiff makes a statement that "[t]here is a ***likely***

racial component to the aberrant manner in which Plaintiff's request for reasonable accommodations

were treated by Defendants." Pl. Aff. ¶ 17.  Plaintiff's basis for this new[13] statement is that since

diabetes disproportionately affects Blacks and Hispanics, "[t]his phenomenon ***could very well be***

associated with Defendants' haughty attitude towards Plaintiff's health concerns." *See* Pl. Aff.  ¶¶ 17-

---

[12]  The Eighth Amendment also requires that inmates be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)(*per curiam*)(quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), *cert. denied*, 450 U.S. 1041(1981)).

[13]  Plaintiff did not mention any racial basis for his claims in his complaint, but due to the liberality with which the court considers *pro se* submissions, the court will address plaintiff's statements. *See Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2003)(court will interpret pro se party's papers to raise the strongest arguments they suggest).

19 (emphasis added).

First, the court would point out that plaintiff's complaint is for discrimination based upon *disability*. Although it is possible that defendants could discriminate against plaintiff based upon disability and race or based upon race alone, it is clear from plaintiff's statement that his statement is purely speculation, based upon his research regarding diabetes. Pl. Aff. ¶¶ 17-18. The statement that the "phenomenon *could very well be* associated" with the defendants' behavior is not the statement of a claim of racial discrimination. Plaintiff concludes his allegations by stating that since diabetes disproportionately affects Blacks and Hispanics, "it would be *prudent*" for defendants to establish "peer-educational programs whereby prisoners could educate and encourage others to healthy alternatives and sound disease management." Pl. Aff. ¶ 19 (emphasis added). While it could be "prudent" or beneficial for defendants to institute educational programs for diabetics, it is neither statutorily nor constitutionally mandated.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that defendants' motion for judgment on the pleadings (Dkt. No. 23) is **GRANTED** and the complaint is **DISMISSED IN ITS ENTIRETY.**

Dated: February 23, 2009

Thomas J. McAvoy
Senior, U.S. District Judge

15